58 P.(2d) 1163

FRANK A. HUBBELL CO. v. CURTIS et al.

No. 4100.

Supreme Court of New Mexico.

June 8, 1936.

Marron & Wood, of Albuquerque, for appellant.

Joseph Gill, of Albuquerque, and E. M. Grantham, of Clovis, for appellees.

BRICE, Justice.

This appeal is prosecuted from a judgment in favor of appellant for $2,361.12 for the value of improvements placed on lands under a saline lease from the state of New Mexico by appellant while he or his predecessors in title were lessees from the state. The land was subsequently leased to appellee Curtis by the appellee commissioner of public lands.

This proceeding originated in the state land office. The appellant had been lessee from the state of certain saline lands which were subsequently leased to the appellee Curtis. The lease, under which appellant had held the land, provided among other things: "4. It is agreed that the lessee shall have the right to erect and maintain buildings of a permanent nature for its use in storing and caring for salt that may be extracted from the leased premises and for all proper purposes incidental thereto. Upon the expiration of this lease or upon its termination for any other reason the lessee shall be entitled to be paid the reasonable value of all such necessary improvements erected on said lands before the premises shall be leased to another lessee."

The commissioner of public lands appraised the improvements placed on the lands involved at a value of $2,100. From this appraisement an appeal was taken to the district court of the First judicial district. Upon trial it was determined by the court that the value of the improvements was $5,653.29. The judgment for this amount was set aside on appellee's motion, and a second trial resulted in a judgment for appellant for $2,361.12, from which this appeal is prosecuted.

The sustaining of appellees' motion for, and the granting of a new trial, is assigned as error. Among the grounds alleged in the motion upon which appellee claimed he was entitled to a new trial is that new evidence had been discovered since the trial, which would change the result of the case; that it could not have been discovered before the trial by the exercise of due diligence; that the evidence is material to the cause and is not merely cumulative or contradictory to the evidence theretofore admitted. The alleged new evidence, supported by affidavits, was largely to the effect that numerous buildings and improvements upon the property which the court had appraised as the property of appellant had not been placed there by appellant or its predecessors in title and were not owned by it; but were in fact the property of the state of New Mexico.

We are not inclined to interfere with the discretion of the court in granting a new trial unless it should clearly appear that such discretion was abused. The court was authorized to believe from the affidavits presented in support of the motion that he had been imposed upon by unwarranted claims of appellant to property that did not belong to it. It was peculiarly in the province of that court to determine whether the motion had been providently made and properly supported. We

cannot say from the record there was such abuse of discretion as would require a reversal of the case, in view of the affidavits supporting the motion, and order of the court, in which, among other things, it was stated: "* * * and it appearing to the court that appellant asserted ownership to all the improvements on the saline lands, and that the same were placed there at his sole cost and expense, that it is shown by the newly discovered evidence that a portion of the said improvements did not belong to the said appellant and that it is necessary to grant a new trial in order to prevent a miscarriage of justice."

Appellant, however, claims that it is the owner of all improvements placed upon the lands by other parties, for no other reason, apparently, than that it was lessee from the state at the time of or subsequent to the making of such improvements by third persons. Appellant states in its brief at page 22: "* * * Ever since 1878, it has been the law in this jurisidiction, established by Chapter 6 of the laws of that year, that persons making improvements upon public lands have ownership and right in such improvements. * * *" Sections 3 and 4 of the Act of 1878, referred to, are brought forward as sections 105-1816 and 105-1817, Comp.St.Ann.1929, under the title of Ejectment. The Territorial Supreme Court held that these statutes could not apply to public lands, as a lien therein given to one placing improvements on public lands would interfere with its disposition. Chavez v. Chavez de San-chez, 7 N.M. 58, 32 P. 137. Neither do they apply to state lands, as they would violate section 10 of the Enabling Act, which limits the power of the state in the disposition and leasing of such lands, and prohibits it from mortgaging or incumbering the land in any manner. This court in Sandoval v. Perez, 26 N.M. 280, 191 P. 467, has held that the statutes in question could not be invoked by one who did not have color of title to the lands. It is only by virtue of section 132-115 Comp.St.Ann. 1929, that appellant can claim pay for improvements on the lands. But it does not follow, as appellant contends, that improvements, placed on these lands by another, become the property of appellant, though it subsequently leased the land from the state, or even had it under lease at the time such improvements were made. It owns only such improvements as it placed upon the lands or purchased from one authorized by law to dispose of them.

The court did not err in refusing to fix any value on "a pipe line or the water appurtenant there to" as being recoverable items. The evidence discloses that the appellant, while lessee of the land involved, laid a pipe line from a fresh water spring situated on land owned by it, to the place where the salt is obtained from the lake. It is argued that it is necessary to have fresh water for certain purposes in connection with mining salt. This water is situated a little more than a mile from the place of its use. It is stated by appellant

that the pipe line has no value except in connection with the supply of water and the right to its use. That because of the lack of value in the pipe line without the right to use water that "the appellant tendered with the pipe line the right to take sufficient water from its spring from which the pipe is laid" to supply the water necessary to operate the lease during the life of the pipe, and asked the court to fix, first, the value of the pipe in the ground in its present condition; and, second, the reasonable value of a water right from the spring to operate the lease during the life of the pipe line, which is now badly corroded.

Appellant then tenders a conveyance of such water right, or a contract or any document necessary to convey it, and asked the court to adjudicate and prescribe the nature and the value of the water right necessary for the purposes stated. The court refused to find any value in the pipe "apparently putting it on the ground that before the appellant was entitled to the value of his pipe line he must offer and tender a perpetual water right for the use of salt lakes." Appellant calls attention to section 132-115 Comp.St.1929, which is as follows: "Any person applying to lease any state lands upon which there are fences, buildings, reservoirs, ditches, dams, wells or other improvements or water rights appurtenant to said land belonging to another person or lessee shall before a lease shall be issued to him, file in the office of the commissioner a receipt showing that the price of such improvements and water rights, as agreed upon between him and owner thereof, or as may be fixed by the commissioner, has been paid to such owner, or deposit with the commissioner the price so agreed upon or fixed."

If appellant had a water right, that would come within the terms of the above statute, if the statute applies to saline leases, then it is appurtenant to the land and could be used without the necessity of paying a rental therefor. Appellant wishes the court to establish a water right by the judgment of the court and force the appellee to pay its value and accept it. The statute in question refers to existing water rights. If there is a water right in the spring mentioned appurtenant to this land, then appellee may use the water without cost. It is not shown that this land has an appurtenant water right; but, to the contrary, appellant claims to be the owner of the spring and the right to the use of the water, and only concedes appellees' right to use it if he pays its full value. Such is not our understanding of the meaning of the water right contemplated by the statute mentioned, if indeed this statute has reference to saline land leases; a question unnecessary to decide.

Another contention is: "The Court erred in concluding as a matter of law that in order to be recoverable, the improvements in the nature of houses must at the time be fit for human habitation, and in denying any value for the two structures to which that applied."

Whether the court erred in placing no value on these structures depends upon the evidence. If their condition is such that it would cost more to repair them than they would be worth when repaired, then the court would be justified in holding that they are of no value. The testimony with reference to their condition and value is not cited in appellant's brief, even if included in the transcript (only a part of the evidence is brought here), nor is the record cited where "the court ruled that any structure intended for a house unfit for human habitation, in its then condition, would be entirely excluded in determining the damages notwithstanding the fact that by repairs or restoration, regardless of how much or little was necessary," that would be required to make it fit for human habitation, and this court will not read the whole record to find it. It does not appear in the findings or judgment of the court. The ruling of the court, if error, would be harmless if the houses in fact would cost more to repair than they would be worth. The question cannot be answered by us because the record is not cited where the court made such ruling, nor is any testimony cited showing there is some actual value in these properties. Reversible error cannot be predicated on an erroneous conclusion of law, unless it be shown that appellant was injured thereby, and no such showing is made here.

The court did not err in refusing to sustain a motion to strike all of the evidence of the witness Fenwick, who testified as to the values of the various buildings. No particular part of the testimony was moved against, but all of it. The basis of the motion was the lack of knowledge of the witness Fenwick of the matters about which he was testifying as an expert. We think the objection goes more to the weight that should have been given to this testimony than to the fact that none of it should have been considered by the court. We have examined the testimony and conclude that it was not all inadmissible, if any was.

It is urged that the court erred in refusing a certificate allowing the fees and expenses of more than four witnesses to be charged· as costs in the case. It seems that appellant used twelve witnesses in the trial and submitted a motion and request to the court to certify that more than four witnesses were necessary to properly present his case, as provided by section 105-1305 Comp.St.Ann.1929, which the court denied. This statute is as follows: "It shall not be legal in any civil suit for the clerk of any district court to tax in favor of the prevailing party the costs of more than four witnesses, unless the court shall certify upon the record that the attendance of more than four witnesses was necessary in the case."

After stating the necessity for the twelve witnesses, appellant closes the motion in the following words:

"Wherefore, and to enable the appellant to charge for the said witnesses and tax their witness fees as costs, appellant requests the Court to certify, pursuant to sec-

tion 105-1305 [Comp.St.1929] C.L. '97, [§ 3155] that more than four witnesses were necessary upon the trial thereof.

"Should the Court refuse to make the certification herewith tendered, appellant requests the Court to find and state the facts upon which such refusal is based."

We think it was unnecessary for the court to more than deny the motion, the effect of which is to hold that not more than four witnesses were necessary to present appellant's case. Section 105-1305 Comp.St.Ann.1929. We are unable to say from the record whether more than four witnesses were necessary, as the whole record is not before us. The presumption is in the correctness of the court's judgment, and that no more witnesses were necessary, as the court refused payment for more; and this presumption will prevail unless it is shown that more than four witnesses were necessary to properly present appellant's case; and appellant has made no such showing. Appellant cites Morrow v. Martinez, 27 N.M. 354, 200 P. 1071, in which it was held it is the duty of the trial court, in a case tried to it, to make specific findings of fact and conclusions of law when requested. This has no reference to the question here presented, but to the trial of a case on the merits.

█ We do not agree that appellant became the owner of any property placed by others than itself on the land leased merely; because, as appellant contends, it held a saline lease thereon. The statute gives no such right. All property placed on state land which became a part of the realty is the property of the state unless otherwise provided by law. The state is a landowner and as such it has the same rights as that of any other owner with reference to ownership of improvements placed upon its property. Appellant was not entitled to pay for any buildings, etc., except such as it or its predecessors in interest, placed thereon, or purchased under authority from the state from a prior lessee, and the district court did not err in so holding.

One of appellant's points is: "If the order granting the new trial is to be construed as imposing the costs on the appellant, this was error." The order with reference to costs reads as follows: "It is hereby ordered that a new trial be and the same is hereby granted in this cause and that the costs be taxed to appellant." It does not appear from this order that the costs of the first trial were taxed to appellant; which, as we view it, would have been error. It is probable that the court intended to tax the costs of the proceeding on motion for new trial, to appellant. Whether this could be done in view of our statute is unnecessary to decide, as the question is not raised. Swallow v. First State Bank, 35 N.D. 323, 160 N.W. 137.

Our statute with reference to costs is as follows: "In all civil actions or proceedings of any kind, the party prevailing shall recover his costs against the other party; Provided, however, that in all cases triable in the supreme court in the first instance, or removed to the supreme court upon ap-

peal or writ of error, the taxation of costs shall be in the discretion of the supreme court, except in those cases in which a different provision is made by law." Section 105-1301 Comp.St.Ann.1929.

While the Supreme Court is given discretion in assessing costs, no such authority is given to the district court, at least not in law actions. It must award costs in favor of the prevailing party. While in interlocutory orders some discretion may be exercised in the assessment of costs, no such discretion is given to the district court in the general trial of the case.

As we read the final judgment entered herein, costs were awarded to the appellant, and properly so. Finding no error in the record, the judgment of the district court is affirmed.

It is so ordered.

SADLER, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.